**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

COURTNEY VOGEL, on Behalf of
Herself and All Others Similarly
Situated,

Plaintiff,

vs.

ARCADIA CONSUMER
HEALTHCARE, INC. d/b/a
KRAMER LABORATORIES, INC.,
a Florida Corporation,

Defendant.

_____

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff, Courtney Vogel ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendants Arcadia Consumer Healthcare, Inc. and Kramer Laboratories, Inc. ("Defendants" or "Kramer Labs").  Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

**<u>INTRODUCTION</u>**

1.    Kramer Labs is a Florida corporation, with its principal place of business in Bridgewater, New Jersey, that markets its Fungi Nail products ("Product(s)") as foot fungus treatment. Kramer Labs manufactures, distributes,

and sells the Products. Defendants sell the Product by deceiving the public about the Products' abilities to cure nail fungus.

2.      Defendants claim on their advertising, packaging, and website (http://funginail.com) that the Products have many purported benefits such as: All Fungi-Nail® Products are Clinically Proven to Cure and Prevent Fungal Infections, Maximum Strength Medicine, Clinically Proven Ingredient to Cure and Prevent Fungal Infections, Triple Action Formula Kills Fungus, Stops Itching & Burning, Restores Skin Health.

3.      Defendants misled Plaintiff and Class Members into believing that the Product would kill nail fungus. These claims are false and misleading.

4.      Plaintiff and members of the classes purchased the Product for their ingredients, potency, and effects, and paid a premium for Defendants' Products over comparable products that were not promoted with the misrepresentations at issue here.

5.      Defendants' representations concerning the Product are unfair, unlawful, and fraudulent, and have the tendency or capacity to deceive or confuse reasonable consumers. As such, Defendants' practices violate Florida's Deceptive and Unfair Trade Practices Act, § 501.201, et seq. ("FDUPTA").

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Defendants as they are headquartered in this District.

7.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. Further, greater than two-thirds of the of the class members reside is states other than the state ADT in which ADT is a citizen. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.    Pursuant to 28 U.S.C. § 1391(b), venue is proper because Plaintiff reside in this District and purchased the Defendant's product in this District.

## THE PARTIES

9.    Plaintiff, Courtney Vogel, is a natural person and a citizen of Florida. Plaintiff purchased the Fungi Nail Product from a local retailer. Prior to her purchase, Plaintiff saw and reviewed Defendants' advertising claims on the Product packaging and labeling itself, and she made her purchase of the Product in reliance thereon. Plaintiff specifically relied upon representations made by Defendants. Plaintiff did not receive the promised benefits or receive the full value of her purchase.

10.    Defendant, Kramer Laboratories, Inc., is a Florida corporation with its principal place of business Bridgewater, New Jersey. Defendant is licensed to conduct business in Florida.

11.    Defendant, Arcadia Consumer Healthcare, Inc., is headquartered in Bridgewater, New Jersey.

12.    Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTUAL ALLEGATIONS

13.    Fungal nail infections, also known as "onychomycosis," are very common. They may affect up to 14% of the general population. [1]

14.    Toenail fungus is an infection that gets in through cracks in your nail or cuts in your skin. Because toes are often warm and damp, fungus grows well there. Different kinds of fungi and sometimes yeast affect different parts of the nail. Left untreated, an infection could spread to other toenails, skin, or even your fingernails.

15.    Infected nails are usually thicker than normal and could be warped or oddly shaped. They can break easily. Nails with fungus might look yellow. Sometimes a white dot shows up on the nail and then gets bigger. When fungus builds up under your nail, it can loosen and even separate the nail from the bed. The fungus can also spread to the skin around your nail.

---

[1] See https://www.cdc.gov/fungal/nail-infections.html.

16.    With toenail fungus, your nail becomes thick and yellow and may show white spots and streaks. A type of mold called a dermatophyte causes tinea unguium, the most common nail fungus. Tinea unguium most frequently targets your toenails, but it can also affect your fingernails. Onychomycosis is another name for the condition.

17.    Kramer Labs manufactures, distributes, advertises, and sells the Product, which for all relevant purposes are identical. At all relevant times, Kramer Labs has marketed the Product in a consistent and uniform manner relating to ingredients, potency, and effect. Kramer Labs sells the Product on its website and through various distributors nationwide.

18.    Fungi Nail is advertised as a treatment for nail fungus, but the supposed medication is ineffective against nail fungus.  For this reason, Kramer Labs has been the subject of an investigation by the Federal Trade Commission and has numerous consumer complaints.

19.    Kramer Labs misleadingly advertises that the Fungi Nail product is a treatment for nail fungus.  The Product name is clear – Fungi Nail – every reasonable consumer will immediately assume the Product is a nail fungus treatment.

20.    The front of the package states "FUNGI NAIL ANTIFUNGAL LIQUID" in bold lettering with a picture of an infected looking toenail:

5



21.     All of the misrepresentations at issue here were consistently made at all times during the class period. Kramer Labs made uniform misrepresentations about the Product that Plaintiff and all class members were exposed to the same misleading advertisements.

22.     The misleading name is on the front label of every Product. The Product label further states "CLINICALLY PROVEN TO CURE AND PREVENT FUNGUL INFECTIONS." Kramer Lab's website states the same claims right above the picture of an infected toenail.

23.    Further, Kramer Lab's advertisements feature misleading instructions showing the Product being applied to the toenail even though the Product does not kill nail fungus:



24.    The misrepresentation identified above, when viewed in the context of the labeling as a whole and the product at issue, has the tendency or capacity to

deceive or confuse reasonable consumers into believing that the Product will treat nail fungus.

25.     Further, Kramer Labs intentionally misleads consumers by mischaracterizing the Products as clinically proven and stating:

- Fungi Nail's maximum strength medicine is so powerful it helps Cure AND Prevent fungal infections.

- Plus, its triple action formula kills fungus, stops itching and burning, and restores skin health.

- Get maximum strength medicine without a prescription with Fungi-Nail.

26.     Plaintiff and Class members would not have purchased the Product or would not have paid as much for the Product, had they known the truth about the mislabeled and falsely advertised Product.

27.     Plaintiff would purchase the Product again, however; at this time Plaintiff is unable to rely on the labeling of these Products because he is unsure whether those representations are truthful.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action on behalf of himself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

**National Class:** All persons in the United States who purchased the Products during the fullest period of law.

In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

**Florida Sub-Class:** All persons in the State of Florida who purchased the Products during the fullest period of law.

29.    Excluded from the Classes are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release of any Defendants in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendants have a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendants, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

30.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

31.    **Numerosity and Ascertainability:** Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and

discovery, including Defendants' records, either manually or through computerized searches.

32.     **Typicality and Adequacy:** Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

33.     **Commonality:** The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a. whether Defendants committed the conduct alleged herein;

b. whether Defendants' conduct constitutes the violations of laws alleged herein;

c. whether Defendants' labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d. whether the Products are adulterated and/or misbranded under the California Health & Safety Code and identical federal law;

e. whether Defendants knew or should have known that the representations were false or misleading;

f. whether Defendants knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Product;

g. whether Defendants' representations, concealments and non-disclosures concerning the Product are likely to deceive the consumer;

h. whether Defendants' representations, concealments and non-disclosures concerning the Product violate the UCL and/or the common law;

i. whether Defendants should be permanently enjoined from making the claims at issue; and

j. whether Plaintiff and the Class are entitled to restitution and damages.

30.    **Predominance and Superiority:** Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.      given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendants committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b.      when Defendants' liability has been adjudicated, claims of all Class members can be determined by the Court;

c.      this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d.      without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendants continues to reap and retain the substantial proceeds of their wrongful conduct.

31.     **Manageability:** The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

### FED. R. CIV. P. 9(b) ALLEGATIONS

32.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the

paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

33.     WHO: Defendants made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are for treatment of nail fungus.

34.     WHAT: Defendants' conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are for the treatment of nail fungus. Defendants omitted from Plaintiff and Class Members that the Products are not for treating nail fungus. Defendants knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendants have and continue to represent that the Products are for the treatment of nail fungus when they are not, and have omitted from the Products' labeling the fact they are not suitable for the nail fungus treatment.

35.     WHEN: Defendants made material misrepresentations and/or omissions detailed herein, including that the Products are for the treatment of nail fungus continuously throughout the applicable Class period(s).

36.     WHERE: Defendants' material misrepresentations and omissions, that the Products are for nail fungus treatment, were located on the very center of the front label of the Products in bold lettering surrounded by a gold star that contrasts with the background of the packaging, which instantly catches the eye of

all reasonable consumers, including Plaintiff, at the point of sale in every transaction. The Products are sold numerous retail stores and online stores.

37.     HOW: Defendants made written misrepresentations right on the front label of the Products that the Products were for nail fungus treatment even though they are not. As such, Defendants' claims are false and misleading. Moreover, Defendants omitted from the Products' labeling the fact that the Product is not suitable for the nail fungus treatment. And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendants' representations and omissions before purchasing the Products.

38.     WHY: Defendants misrepresented their Products as being for suitable for nail fungus treatment and omitted from the Products' labeling the fact that they are not for the express purpose of inducing Plaintiff and Class Members to purchase the Products at a substantial price premium. As such, Defendants profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

## COUNT I

### For Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 et seq.

39.     Plaintiff realleges and incorporates by reference each of the allegations contained in the paragraphs 13-22 above as if fully set forth herein.

40.     Plaintiff brings this claim on his own behalf and on behalf of each member of the Class.

41.     Defendants violated and continue to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

42.     The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Defendants' Product was effective.

43.     Plaintiff and Class members relied upon these advertisements in deciding to purchase the Product.  Plaintiff's reliance was reasonable because of Defendants' reputation as a reliable company.

44.     Had Plaintiff known that the Product was not as advertised, he would not have purchased it. As a result of Defendants' deceptive and unfair acts, Plaintiff and Class members have been damaged.

45.     Defendants' conduct offends established public policy, and is immoral, unethical, oppressive, and unscrupulous to consumers.

46.     Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

47.     Defendants should also be ordered to cease their deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its Product is not of the quality advertised.

## COUNT II

### For False and Misleading Advertising,
### Fla. Stat. § 817.41

48.     Plaintiff re-alleges and incorporates by reference the allegations of in the above-referenced paragraphs 13-22 of the Complaint as if fully set forth herein.

49.     Plaintiff brings this claim on his own behalf and on behalf of each member of the Class.

50.     On their website, in print advertisements, and in other forms of advertisements, Defendants made numerous misrepresentations of material fact regarding the quality of its Product.

51.     Defendants knew that these statements were false.

52.     Defendants intended for consumers to rely on its false statements for the purpose of selling its Product.

53.     Plaintiff and Class members did in fact rely upon these statements. Reliance was reasonable and justified because of Defendants' reputation as a reliable company.

54.     As a result of Defendants' misrepresentations, Plaintiff and Class members suffered damages in the amount paid for Defendants' Product

55.    Plaintiff and Class members are entitled to damages and injunctive relief as set forth above.

## COUNT III

## Fraud
### (On Behalf of the Nationwide Class)

56.    Plaintiff repeats and realleges the allegations in the previous paragraphs 13-22 as if fully set forth herein. Plaintiff brings this cause of action on behalf of themselves and the Nationwide Class.

57.    As alleged herein, Defendants knowingly made material misrepresentations and omissions regarding the Products on the Products' labeling and packaging in the Products' advertisements, and/or on its website, specifically the nail fungus treatment representations and omissions alleged more fully herein.

58.    Defendants made these material efficacy representations and omissions in order to induce Plaintiff and the putative Nationwide Class Members to purchase the Products.

59.    Defendants knew the representations and omissions regarding the Products were false and misleading but nevertheless made such representations through the marketing, advertising and on the Products' labeling.

60.    In reliance on these representations and omissions, Plaintiff and the putative Nationwide Class Members were induced to, and did, pay monies to purchase the Products.

61.    Had Plaintiff and the Nationwide Class known the truth about the Products, they would not have purchased the Products.

62.    As a proximate result of the fraudulent conduct of Defendants, Plaintiff and the putative Nationwide Class paid monies to Defendants, through their regular retail sales channels, to which Defendants are not entitled, and have been damaged in an amount to be proven at trial.

**COUNT IV**

**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

63.    Plaintiff re-alleges and incorporates by reference the allegations of in the above-referenced paragraphs 1-5 and 12-24 of the Complaint as if fully set forth herein.

64.    Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

65.    Plaintiff and Class members conferred a benefit on Defendants by purchasing the deceptively advertised Product at an inflated price.

66.    Defendants received the monies paid by Plaintiff and Class members and thus knew of the benefit conferred upon them.

67.    Defendants accepted and retained the benefit in the amount of the profits they earned from Defendants' Product sales paid by Plaintiff and Class members.

68.     Defendants have profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

69.     Plaintiff does not have an adequate remedy at law against Defendants.

70.     Plaintiff and Class members are entitled to restitution of the amount paid for the Product and disgorgement of the profits Defendants derived from their deceptively advertised Product sales.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a.     Certify this action as a class action;

b.     Award compensatory, statutory, and punitive damages as to all Counts where such relief is permitted by law;

c.     Enjoin Defendants' conduct and order Defendant to engage in a corrective advertising and labeling/disclosure campaign;

d.     Award equitable monetary relief, including restitution;

e.     Award pre-judgment and post-judgment interest at the legal rate;

f.     Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees, costs, and expenses; and

g.     Award such other and further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED:  May 15, 2023                         s/William C. Wright
                                             WILLIAM WRIGHT
                                             The Wright Law Office
                                             FL Bar No. 138861
                                             515 N. Flagler Drive
                                             Suite P-300
                                             West Palm Beach, FL 33410
                                             Telephone: (561) 514-0904
                                             willwright@wrightlawoffice.com